April 13, 1979

## 79-25 MEMORANDUM OPINION FOR THE ADMINISTRATOR OF VETERANS AFFAIRS

### Federal Advisory Committee Act (5 U.S.C. App. § 1 *et seq.*)—Duration of Veterans Administration Advisory Committees

The Attorney General has asked this Office to reply to your letter to him of January 10, 1979, concerning the duration under the Federal Advisory Committee Act (FACA), 5 U.S.C. App. § 1 *et seq.* (1976), of four statutorily created Veterans Administration (VA) advisory committees. We conclude that the duration of advisory committees may be determined by implication from the particular statute involved, and thus be "otherwise provided for by law," within the meaning of the FACA. This would permit such committees to survive the FACA's 2-year cutoff provisions, 5 U.S.C. App. § 14(a)(1)(B) and (2)(B), notwithstanding the absence of any statute providing expressly for their termination. Under the above standards, Congress has so provided by law for the continuing duration of two VA advisory committees and for the extended duration of two other VA advisory committees for limited purposes only.

### I. Background

The VA is currently served by four statutorily created advisory committees: the Advisory Committee on Cemeteries and Memorials (Cemeteries Committee), 38 U.S.C. § 1001 (1976); the Advisory Committee on Structural Safety of Veterans Administration Facilities (Structural Safety Committee), 38 U.S.C. § 5001 (1976); the Special Medical Advisory Group (SMAG), 38 U.S.C. § 4112(a) (1976); and an advisory committee on vocational rehabilitation and educational assistance (Education Committee), 38 U.S.C. § 1792 (1976). The first two were created in 1973, subsequent to the 1972 enactment of FACA; SMAG was created in 1946; the Education Committee was first established in 1952.

None of the acts establishing these committees specifies whether the committee it creates shall exist for a certain term or indefinitely.

Under § 14(a),

(a)(1) Each advisory committee which is in existence on the effective date of this Act shall terminate not later than the expiration of the two-year period following such effective date unless—

* * *

(B) in the case of an advisory committee established by an Act of Congress, its duration is otherwise provided for by law.

(2) Each advisory committee established after such effective date shall terminate not later than the expiration of the two-year period beginning on the date of its establishment unless—

* * *

(B) in the case of an advisory committee established by an Act of Congress, its duration is otherwise provided for by law.

As you suggest, because the statutes that created the four VA committees do not specify their terms of existence, they are governed by the automatic cutoff provisions quoted above unless their duration is, by implication, "otherwise provided for by law."

Since the enactment of the FACA, this Office has been frequently called upon by executive agencies to construe § 14(a) as applied to particular advisory committees. Because the offices responsible for promulgating guidelines for the management of Federal advisory committees[1] have themselves issued no interpretation of the phrase "duration * * * otherwise provided for by law," we have consistently applied an interpretation of the FACA that we reached in 1973 (in consultation with the Office of Management and Budget) based on the manifest intent and legislative history of the FACA.

In our view, the duration of a statutorily created advisory committee may be "otherwise provided for by law" either expressly or by implication. Such duration is provided for by implication if the statute that creates or assigns functions to an advisory committee provides for it a specific function that is continuing in nature and is an integral part of the implementation of a statutory scheme. The statutory assignment to a committee of some regular and well-defined participation in an agency's administrative process would be sufficient to overcome the rebuttable presumption that, unless the statute that creates a committee deals expressly with termination, the committee is to terminate automatically in 2 years. Such an assignment must be more specific than the rendering of general

---

[1] The FACA established a Committee Management Secretariat under the Director of the Office of Management and Budget, 5 U.S.C. App. § 7(a). A 1977 Executive order transferred to the Administrator of General Services (GSA) certain functions under the FACA, including the maintenance of the Secretariat. Exec. Order No. 12024, 3 CFR 158 (1978).

advice to an agency with regard to some program area, which is the general function of most advisory committees.

The interpretation just described, centering on a rebuttable presumption of committee termination, is compelled as a necessary middle ground between narrower and more lenient interpretations, both of which would fail to give effect to Congress' intent in enacting the FACA.

Under a more lenient interpretation, the duration of a committee would be deemed to be otherwise provided for by law if the committee is assigned by statute any specific ongoing function. The interpretation would effectively nullify the automatic termination provisions and undermine the clear purpose of § 14(a), because the general task of all advisory committees to give advice could itself be characterized as a specific ongoing function.

Under a narrower interpretation, a committee's duration would be provided for only if its terms of existence were expressly specified in an Act of Congress. We reject this approach for three reasons. First, it would sweep more broadly than Congress' expressed intent of getting rid of "inactive, meaningless, obsolete and redundant advisory committees," S. Rept. 1098, 92d Cong. 20 (1972), by imposing a rule under which the functions assigned by Congress to an advisory committee would be irrelevant in determining Congress' intent with respect to the duration of the advisory body. Such an approach would be especially troublesome with respect to statutory committees created prior to the enactment of the FACA. Prior to the FACA, Congress, not anticipating any need to specify expressly the term of an advisory committee's existence, would likely have expressed its intent concerning the duration of any committee only by implication, if at all, through the functions and structure established for the committee. Second, the narrower rule would create irrationally different regimes for the perpetuation of statutory and nonstatutory committees.[2] Finally, it would give no effect to the unexplained substitution of the word "duration" for "termination" in the conference version of § 14(a); in speaking of "*duration* otherwise provided by law," instead of "*termination* otherwise provided for by law," Congress may have intended to establish a more flexible approach to determining the longevity of advisory committees [emphasis added].

Because the legislative history of the FACA indicates that uniformity of treatment for Federal advisory committees is a "major objective," S. Rept. 1098, *id.*, 8–9, we believe that the presumption of automatic termination can be rebutted, if at all, by specific statutory language, and not by references to legislative history or administrative practice. Otherwise, our suggested test would be highly uncertain in its application.

---

[2] Nonstatutory committees may simply be renewed, prior to expiration, by action of the President or of the Government officer who established the committee. 5 U.S.C. App. § 14(a).

Although our approach, in sum, is partly functional, we do not believe that Congress intended the importance an agency or department attaches to a particular committee to be sufficient in itself to establish the committee's continuing duration as a statutory committee. By creating a test of termination that relies on statutory language, Congress has created a system whereby certain statutory committees may well terminate despite their demonstrable usefulness to the agencies they advise. Congress has nonetheless reserved to itself the option of perpetuating important committees by statute beyond 2 years, leaving the option to each agency head of establishing, after consultation with GSA and the furnishing of public notice, a statutorily created committee as a nonstatutory body. 5 U.S.C. App. § 9(a)(2). Presumably, the ease of recreating important advisory committees whose duration is not provided for by law other than by the FACA will obviate the problems created in such cases if the committees serve truly important functions.

## II. Post-FACA Committees

Applying our interpretation of § 14(a) to both of the VA committees established subsequent to the enactment of the FACA, we conclude, as discussed below, that the statute establishing each committee sets forth specific functions, continuing in nature, that are integral parts of the implementation of a statutory scheme, and thus provides for each committee's continuing duration.

### A. Structural Safety Committee

Under 38 U.S.C. § 5001, the Administrator, subject to Presidential approval, is authorized to establish hospitals, domiciliaries, and outpatient dispensary facilities that shall be constructed under standards to be prescribed by the Administrator. Section 5001(b) directs the Administrator to appoint an Advisory Committee on Structural Safety of Veterans Administration Facilities, "which shall approve regulations" prescribed under § 5001. This assigned function is, on its face, specific, ongoing, and integral to the implementation of the statutory program for acquiring and operating medical and domiciliary facilities.

### B. Cemeteries Committee

Section 1001 of title 38 directs the appointment of an Advisory Committee on Cemeteries and Memorials. It provides that the Administrator "shall advise and consult" with the committee concerning various functions, including the selection of burial sites and the erection of appropriate memorials. Consultation with respect to these particular activities is a specific function, ongoing in nature, that is integral to those activities. The committee is further required by statute "to make periodic reports and recommendations to the Administrator and to Congress." We have uniformly interpreted the statutory requirement of periodic reports to Congress as a specific continuing function that Congress deems

integral to those statutory schemes of which such reports are a part.

We thus conclude that the duration of both the Structural Safety and Cemeteries Committees is "otherwise provided for by law" within the meaning of § 14(a) of the FACA, and thus both committees survive the 2-year automatic cutoff provision of § 14(a)(2)(B).

### III. Pre-FACA Committees

Applying our interpretation of § 14(a) to both of the VA committees established prior to the enactment of the FACA, we conclude, as discussed below, that the statute establishing each committee fails to set forth functions implying each committee's indefinite duration. Congress, however, has passed subsequent legislation, giving at least some extended duration to each committee for particular purposes.

### A. Education Committee

Section 1792 of title 38 directs the Administrator to form an advisory committee composed of experts from various fields and veterans to advise the VA with respect to its vocational rehabilitation and educational assistance programs. Its functions are described as follows:

> The Administrator shall advise and consult with the committee from time to time with respect to the administration of this chapter and chapters 31, 34, and 35 of this title, and the committee may make such reports and recommendations as it deems desirable to the Administrator and to the Congress.

This provision is substantially the same in wording as § 262 of the Veterans Readjustment Assistance Act of 1952, 66 Stat. 679, under which the committee was originally created.

On its face, § 1792 designates no particular decisionmaking process in which the committee will play a specified role. There is no requirement that the committee act in any particular instance. It is permitted but not required to report to the Administrator and to Congress, and no indication appears that the committee is to provide its advice on a regular basis. Consequently, the duration of the Education Committee is not provided for by implication by its statute.

Congress did, however, in § 304(b)(1) of the G.I. Bill Improvement Act of 1977 (the 1977 Act), Pub. L. No. 95–202, 91 Stat. 1442 (to be codified at 38 U.S.C. note following § 1792) provide:

> The Administrator of Veterans' Affairs, in consultation with the Advisory Committee formed pursuant to section 1792 of title 38, United States Code, shall provide for the conduct of an independent study of the operation of the programs of educational assistance carried out under chapters 34 and 36 of title 38, United States Code * * *. A report of such study shall be submitted to the President and the Congress not later than September 30, 1979.

This wording is problematic because it might be read to imply the understanding of Congress that the "Advisory Committee formed pursuant to section 1792" still existed on November 23, 1977, the date the section was enacted. That implication might contradict our conclusion that § 14(a) operated to terminate the Education Committee 2 years after the enactment of the FACA on October 6, 1972.

Such an interpretation would, in our view, be incorrect. First, it is elementary that statutes concerning the same subject are to be read in a consistent manner, if possible. That 1977 Act may reasonably be read as re-forming the Education Committee until September 30, 1979, for the limited purpose of advising the Administrator concerning an independent study of VA educational assistance programs. This would effect the purpose of the 1977 Act without contradicting the FACA. Second, the FACA itself proscribes any implied repeal of its termination provisions:

> The provisions of this Act * * * shall apply to each advisory committee except to the extent that any Act of Congress establishing such advisory committee specifically provides otherwise. [5 U.S.C. App. § 4(a).]

Nothing in the statutes relevant to the Education Committee specifically provides that the same test of implied duration that applies to other committees should not be applied to it.

Interpreting the 1977 Act is necessarily difficult because Congress seems itself to have overlooked the FACA problem. The provision regarding the Education Committee's role in the VA study was apparently added in conference, from which no report issued. The original House bill made no reference to the Education Committee. H.R. Rept. 586, 95th Cong., 1st Sess. (1977). The original Senate bill would have amended § 1792 to provide that the Administrator would meet with the advisory committee "on a regular basis," and at least semiannually. S. Rept. 468, 95th Cong., 1st Sess. 10 (1977).

In its discussion of the Education Committee, the Senate Committee on Veterans' Affairs, at 118–119, manifests its unawareness of the FACA problem.[3] However, its discussion does buttress the conclusion that Congress, in establishing the committee in 1952, had not provided for it a specific continuing role that is integral to VA administration:

> Unfortunately, the advisory committee—established by Congress specifically to assist the Veterans' Administration in establishing channels of communication with these [representatives from education associations] and other concerned individuals—has met sporadically. Apparently, little emphasis has been placed by the

_____

[3] The Senate committee noted disapprovingly that the Education Committee had not met since October 17, 1975. S. Rept. 468, 95th Cong., 1st Sess. 119 (1977). Our conclusion, however, is that the committee should have been deemed terminated as a statutory committee on October 6, 1974.

Veteran's Administration upon the helpful role that the committee could play in the mutual exchange of information and ideas.

\*     \*     \*

The Committee also notes, as it did last year, that in the 10 years that the section 1792 committee has existed, it has yet to make any reports or recommendations to the Congress under the discretionary authority granted under section 1792; it has reported only in response to a specific mandate of law to do so. [*Ibid.*]

Although Congress, in 1977, gave a new function to the Education Committee, the 1977 Act does not alter our conclusion that, as created in 1952, the Education Committee was assigned no specific ongoing function integral to VA administration that implied its continuing duration. Consequently, the presumption of the committee's automatic termination after 2 years under § 14(a) of the FACA stands unrebutted. The effect of the 1977 Act was merely to reconstitute the committee for the limited purpose of consulting with the Administrator regarding the study authorized by the Act. The committee will terminate, under the 1977 Act, on September 30, 1979, unless reauthorized by Congress or rechartered by the Administrator under § 9(a)(2) of the FACA.

### B. SMAG

Section 4112 of title 38 directs the Administrator to establish a special medical advisory group (SMAG) composed of various professionals nominated by the Chief Medical Director—

whose duties shall be to advise the Administrator, through the Chief Medical Director, and the Chief Medical Director direct [sic], relative to the care and treatment of disabled veterans, and other matters pertinent to the Department of Medicine and Surgery.

This provision is worded substantially the same as § 12 of the Act of January 3, 1946, 59 Stat. 678, under which SMAG was originally formed.

Like the Education Committee statute, § 4112 designates no particular decisionmaking process in which the committee will play a specified role. There is no requirement under this law that SMAG act in any particular instance. SMAG meets at the pleasure of the Administrator[4] and is required to give no particular reports. Consequently, the duration of SMAG is not impliedly provided for by its establishing statute, notwithstanding SMAG's genuine usefulness to the VA.

---

[4] As originally mandated, SMAG was to conduct "regular calendar quarterly meetings." Act of January 3, 1946, § 12, 59 Stat. 678. Congress, in 1966, amended this wording, providing:

The special medical advisory group shall meet on a regular basis as prescribed by the Administrator. [Veterans Hospitalization and Medical Services Modernization Amendments of 1966, Title I, § 109(a), 80 Stat. 1370.]

Congress did, however, give SMAG additional functions. In 1966, it enacted 38 U.S.C. § 5055, establishing a SMAG Advisory Subcommittee on Programs for Exchange of Medical Information to advise the Administrator regarding the statutory scheme of grants to medical institutions exchanging medical information with the VA. § 5055(a). The Administrator is authorized to make grants under § 5055(b) "upon the recommendation of the Subcommittee." Further, under § 5055(d):

> The Administrator, after consultation with the Subcommittee shall prescribe regulations covering the terms and conditions for making grants, under this section.

These specific ongoing functions, integral to the statutory grant-making process, do imply the continuing duration of the SMAG subcommittee for as long as the statutory program remains authorized. They do not, however, amend § 4112, and do not, by themselves, extend the duration of SMAG for its other functions longer than 2 years after the enactment of the FACA.

In 1972, however, Congress enacted 38 U.S.C. § 5070, establishing a system of grants to new State medical schools, VA-affiliated medical schools, and health manpower training institutions. Under § 5070(c), the Administrator is empowered to promulgate regulations covering agreements and grants under title 38, chapter 82 "after consultation" with SMAG. The specific, ongoing, and integral nature of this function implies the continued duration of SMAG to perform this function as long as agreements and grants are made under this statute. No indication appears, however, that § 5070(c) is to be deemed an amendment of § 4112 or to extend the life of SMAG for any purpose other than consulting with regard to grants and agreements under chapter 82.

No other provision or amendment to § 4112 implies the continuing duration of SMAG beyond October 6, 1974, for any purpose other than those named in §§ 5055 or 5070.[5] SMAG and its authorized subcommittee thus are no longer authorized to perform general functions under § 4112, and SMAG will terminate in its entirety upon the termination of the VA's programs under § 5055 and chapter 82, unless reauthorized by Congress or rechartered by the Administrator under § 9(a)(2) of the FACA.

### IV. Conclusion

In sum, as we interpret § 14(a) of the FACA, it creates a rebuttable presumption that, unless a statute creating an advisory committee deals

---

[5] In 1972, Congress enacted 38 U.S.C. § 4124, under which the Chief Medical director, after consultation with SMAG, is to carry out the provisions of subchapter II of chapter 73 of title 38, regarding supervision, staffing, and personnel training for regional medical education centers. Congress did not, however, designate for SMAG a specific, ongoing, integral role in the implementation of this subchapter. In 1976, Congress amended 38 U.S.C. § 4112 to add new members to SMAG: its 1976 amendment, however, did not affect the functions or duration of the committee. Veterans Omnibus Health Care Act of 1976 §§ 110(8), 209(b)(3), Pub. L. 94–581, 90 Stat. 2849, 2861.

expressly with its termination, the committee terminates 2 years after the enactment of the FACA or after the creation of the committee, whichever comes later. This presumption may be rebutted by a showing that Congress, in creating a committee, assigned to it a specific ongoing function that is integral to a particular statutory scheme. Such a showing can be made with respect to the Cemeteries and Structural Safety Committees. Congress has implied the continuing duration of SMAG only to perform functions under 38 U.S.C. §§ 5055 and 5070 for the life of the relevant VA programs. It has provided for the reformation of the Education Committee to consult with respect to a particular study to be completed on September 30, 1979.

LEON ULMAN

*Deputy Assistant Attorney General*

*Office of Legal Counsel*
